1

2

3

4

5

6

7                      UNITED STATES DISTRICT COURT

8                      EASTERN DISTRICT OF CALIFORNIA

9

10   FRANCINE J. THOMAS,           ) 1:08-cv-01316-SMS
                                   )
11                  Plaintiff,     ) DECISION AND ORDER DENYING
           v.                      ) PLAINTIFF'S SOCIAL SECURITY
12                                 ) COMPLAINT (DOC. 1)
     MICHAEL J. ASTRUE,            )
13   COMMISSIONER OF SOCIAL        ) ORDER DIRECTING THE ENTRY OF
     SECURITY,                     ) JUDGMENT FOR DEFENDANT MICHAEL J.
14                                 ) ASTRUE, COMMISSIONER OF SOCIAL
                    Defendant.     ) SECURITY, AND AGAINST PLAINTIFF
15   _____) FRANCINE J. THOMAS
                                   )

16

17       Plaintiff is proceeding with counsel with an action seeking

18  judicial review of a final decision of the Commissioner of Social

19  Security (Commissioner) denying Plaintiff's application of April

20  21, 2006, for Supplemental Security Income benefits in which she

21  had claimed to have been disabled since September 1, 2006,[1] due to

22  back problems, asthma, varicose veins, mental condition, and high

23  blood pressure. (A.R. 132, 136, 132-43, 339.) The parties have

24  consented to the jurisdiction of the United States Magistrate

25  Judge pursuant to 28 U.S.C. § 636(c)(1), and pursuant to the

26  order of Judge Lawrence J. O'Neill filed September 30, 2008, the

27  _____

28      [1] Originally Plaintiff identified April 9, 1999, as the date her
     disability commenced, but she subsequently amended the date. (A.R. 8, 136.)

                                    1

matter has been assigned to the Magistrate Judge to conduct all further proceedings in this case, including entry of final judgment.

The decision under review is that of Social Security Administration (SSA) Administrative Law Judge (ALJ) James P. Berry dated June 23, 2008 (A.R. 8-16), rendered after a hearing held April 30, 2008, at which Plaintiff appeared and testified with the assistance of counsel (A.R. 8, 17-49). The Appeals Council denied Plaintiff's request for review on July 24, 2008 (A.R. 1-3), and thereafter Plaintiff filed his complaint in this Court on September 5, 2008. Briefing commenced on May 19, 2009, and was completed with the filing of Defendant's opposition on July 16, 2009. The matter has been submitted without oral argument to the undersigned Magistrate Judge.

I. Standard and Scope of Review

This Court has jurisdiction of the underlying controversy pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g).

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 402 (1971), but less than a preponderance, Sorenson v. Weinberger, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401. The Court must consider the record

1  as a whole, weighing both the evidence that supports and the
2  evidence that detracts from the Commissioner's conclusion; it may
3  not simply isolate a portion of evidence that supports the
4  decision. <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 882 (9th Cir.
5  2006); <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985).
6  It is immaterial that the evidence would support a finding
7  contrary to that reached by the Commissioner; the determination
8  of the Commissioner as to a factual matter will stand if
9  supported by substantial evidence because it is the
10 Commissioner's job, and not the Court's, to resolve conflicts in
11 the evidence. <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 (9th
12 Cir. 1975).

13      In weighing the evidence and making findings, the
14 Commissioner must apply the proper legal standards. <u>Burkhart v.</u>
15 <u>Bowen</u>, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must
16 review the whole record and uphold the Commissioner's
17 determination that the claimant is not disabled if the
18 Commissioner applied the proper legal standards, and if the
19 Commissioner's findings are supported by substantial evidence.
20 <u>See</u>, <u>Sanchez v. Secretary of Health and Human Services</u>, 812 F.2d
21 509, 510 (9th Cir. 1987); <u>Jones v. Heckler</u>, 760 F.2d at 995. If
22 the Court concludes that the ALJ did not use the proper legal
23 standard, the matter will be remanded to permit application of
24 the appropriate standard. <u>Cooper v. Bowen</u>, 885 F.2d 557, 561 (9th
25 Cir. 1987).

26      II. <u>Disability</u>

27          A. <u>Legal Standards</u>

28      In order to qualify for benefits, a claimant must establish

that she is unable to engage in substantial gainful activity due
to a medically determinable physical or mental impairment which
has lasted or can be expected to last for a continuous period of
not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A
claimant must demonstrate a physical or mental impairment of such
severity that the claimant is not only unable to do the
claimant's previous work, but cannot, considering age, education,
and work experience, engage in any other kind of substantial
gainful work which exists in the national economy. 42 U.S.C.
1382c(a)(3)(B); Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th
Cir. 1989). The burden of establishing a disability is initially
on the claimant, who must prove that the claimant is unable to
return to his or her former type of work; the burden then shifts
to the Commissioner to identify other jobs that the claimant is
capable of performing considering the claimant's residual
functional capacity, as well as her age, education and last
fifteen years of work experience. Terry v. Sullivan, 903 F.2d
1273, 1275 (9th Cir. 1990).

     The regulations provide that the ALJ must make specific
sequential determinations in the process of evaluating a
disability: 1) whether the applicant engaged in substantial
gainful activity since the alleged date of the onset of the
impairment, 2) whether solely on the basis of the medical
evidence the claimed impairment is severe, that is, of a
magnitude sufficient to limit significantly the individual's
physical or mental ability to do basic work activities; 3)
whether solely on the basis of medical evidence the impairment
equals or exceeds in severity certain impairments described in

4

1  Appendix I of the regulations; 4) whether the applicant has
2  sufficient residual functional capacity, defined as what an
3  individual can still do despite limitations, to perform the
4  applicant's past work; and 5) whether on the basis of the
5  applicant's age, education, work experience, and residual
6  functional capacity, the applicant can perform any other gainful
7  and substantial work within the economy. See 20 C.F.R. § 416.920.

8      B. The ALJ's Findings

9      Here, the ALJ found that Plaintiff had severe impairments of
10 bipolar disorder, degenerative disc disease, and asthma which did
11 not meet or medically equal a listed impairment, but she retained
12 the residual functional capacity (RFC) to lift and carry twenty
13 pounds occasionally and ten pounds frequently, sit, stand and
14 walk for six hours each out of an eight-hour day, occasionally
15 climb, but should avoid concentrated exposure to pulmonary
16 irritants; she could perform simple, repetitive tasks (SRT),
17 maintain attention, concentration, persistence, and pace, relate
18 to and interact with others, adapt to usual changes in work
19 settings, and adhere to safety rules. She could not perform her
20 past relevant work, but as a younger individual (forty-six years
21 old) with a high school education and ability to communicate in
22 English, and considering Plaintiff's work experience and RFC,
23 jobs existed in significant numbers in the national economy that
24 Plaintiff could perform. Thus, Plaintiff was not under a
25 disability since April 21, 2006.[2] (A.R. 10-16.)

26

27      [2] Although a previous decision dated September 19, 1995, issued after a
hearing before an ALJ and not reviewed by the Appeals Counsel, determined that
28 Plaintiff had the RFC to perform light work and was not disabled, Plaintiff
had presented new and material evidence of additional impairments warranting a

III. <u>The Course of the ALJ's Analysis</u>

Plaintiff argues that the ALJ erred in failing to evaluate the claimant's mental impairment and resulting functional limitations. (Brief pp. 1, 7-9.) Plaintiff argues that the ALJ failed to follow the required steps of analysis of Plaintiff's functional impairment, steps that are set forth in 20 C.F.R. § 416.920, including determining Plaintiff's impairments or a combination thereof, determining the severity of those impairments and whether or not they meet or medically equal a listed impairment, determining Plaintiff's RFC while considering all impairments (even those that are not severe), considering whether the claimant can perform past relevant work, and, if not, whether an adjustment can be made to other work. Further, with respect to any mental impairment found, the ALJ must engage in an analysis pursuant to 20 C.F.R. § 416.920a, including identifying the mentally determinable impairment and specifying the signs, symptoms and findings that substantiate its presence; rating the degree of functional limitation in terms of four broad areas of functioning (activities of daily living, social functioning, concentration, persistence, and pace, and episodes of decompensation); determining whether any impairment is severe and whether any severe impairment meets or is equivalent in severity to a listed impairment; and assessing residual functional capacity (RFC).

Reference to the ALJ's decision shows that the ALJ followed

---

change in her RFC. Thus, in the decision under review, the ALJ expressly concluded that the presumption of continuing non-disability did not apply. (A.R. 8.)

1 the required analytical path. The ALJ found that Plaintiff had
2 specified severe impairments (bipolar disorder, degenerative disc
3 disease, and asthma) at step two (A.R. 10); cited to the medical
4 evidence from Drs. Kim, Bansal, and Obrocea (A.R. 10-11);
5 evaluated the severity of the impairments and Plaintiff's
6 functionality (A.R. 11-12); concluded that Plaintiff's mental
7 impairment did not cause at least two "marked" limitations or one
8 "marked" limitation and repeated episodes of decompensation (A.R.
9 11-12); determined that the evidence did not satisfy the "B" and
10 "C" criteria (A.R. 12); and assessed Plaintiff's RFC (A.R. 12-
11 15).

12    Contrary to Plaintiff's assertion (Brief pp. 9-10), the ALJ
13 did not merely consider limitations concerning simple repetitive
14 tasks, attention and pace, relating to and interacting with
15 others, adaption, and adherence to safety rules. The ALJ
16 expressly considered the "paragraph B" and "paragraph C"
17 criteria. (A.R. 11-12.) The ALJ concluded that Plaintiff was
18 mildly restricted in activities of daily living; moderately
19 restricted in social functioning and maintaining concentration,
20 persistence or pace; and there were no episodes of
21 decompensation. (A.R. 12.) The ALJ considered whether a listing
22 was met. The ALJ further considered the effect of the impairments
23 on Plaintiff's RFC, expressly addressing Plaintiff's daily
24 activities, rejecting the treating physician's functional
25 assessment, and putting weight on the opinions of the state
26 agency physicians concerning Plaintiff's specific abilities
27 concerning understanding, memory, sustained concentration and
28 persistence, social interaction, and adaptation. (A.R. 14-15.)

1    The Court therefore concludes that the ALJ followed the
2 appropriate course of analysis in evaluating Plaintiff's
3 impairments.

4    IV. Use of Inhaler and Formulation of RFC

5    In an abundance of caution, the Court will address
6 Plaintiff's assertion made in the factual background section of
7 her brief (p. 6, ll. 10-16) that the ALJ gave no consideration to
8 Plaintiff's requirement of using a nebulizer and completely
9 disregarded the functional limitations outlined by the claimant's
10 treating physician.

11    Reference to the record shows that the ALJ did not ignore
12 Plaintiff's asthma. In various parts of the decision, the ALJ
13 detailed the medical evidence concerning Plaintiff's severe
14 impairment of asthma. He noted a long history of treatment for
15 asthma (A.R. 10), with a chest x-ray taken in January 1995
16 revealing no acute cardiopulmonary disease (A.R. 10, 197
17 [costophrenic angles and lung fields clear]). He cited to
18 neurologist Dr. Kim's orthopedic evaluation of March 2005 (A.R.
19 10-11, 202-05), in which Plaintiff reported that she smoked a
20 half pack of cigarettes per day (A.R. 203) and upon examination
21 had lungs that were clear to auscultation throughout (A.R. 204).
22 The ALJ also cited to the report of internist Dr. Radhey Bansal's
23 consultive examination of July 2006 (A.R. 11, 260-67, 261-62) in
24 which Plaintiff denied smoking and reported a history of COPD and
25 asthma episodes intermittently, getting worse off and on, with
26 medications of Albuterol inhaler, Advair inhaler, and even
27 nebulizer treatments at home. The ALJ expressly noted that Dr.
28 Bansal reported upon examination a few scattered rhonchi,

occasional basal rales, fair air entry, and no significant
shortness of breath,[3] and that he diagnosed a history of chronic
obstructive pulmonary disease and bronchial asthma fairly
controlled with various medications. (A.R. 11, 262.)

Further, in the course of considering Plaintiff's RFC, the
ALJ undertook an analysis of Plaintiff's subjective complaints
which Plaintiff does not expressly challenge but which
demonstrates that the ALJ rejected Plaintiff's subjective
complaints concerning her asthma medication. The ALJ expressly
found that Plaintiff's impairments could reasonably expected to
produce the alleged symptoms but that her statements concerning
the intensity, persistence, and limiting effects of the symptoms
were not entirely credible. (A.R. 14.)

Plaintiff had testified at the hearing that when her asthma
was really bad, she had to use a nebulizer every six hours or
four times a day. The nebulizer was a machine that one turned on
and breathed through for a breathing treatment that generally
took about fifteen to twenty minutes per treatment. Use of it
varied, but Plaintiff said she had to use it four times a day at
least three to four times during the course of a week. She had
used two different machines for six or seven years. She had used
an Albuterol inhaler twice a day or when needed, and at the time
of the hearing she had instead a new ProAir inhaler that she used
by inhaling a single pump, waited ten minutes, and inhaled
another pump; she did this four to six times a day. It all would
start when she would suffer allergy symptoms, which irritated her

[3] The record reflects that Plaintiff was observed to be "pretty comfortable at rest." (A.R. 261.)

9

1  nose; she would get a sore throat and be all clogged up, and it
2  would end up in bronchitis, asthma, or respiratory infection; but
3  if she was just normal, she would use the inhaler at least twice
4  a day. She also used a steroid inhaler, Flovent or Advair
5  depending on which worked better, and "Accolate" pills taken
6  twice daily. She used the steroid inhaler twice a day with the
7  Albuterol when she had to take the breathing treatments. Pollen
8  or dust or anything like that would cause Plaintiff to start
9  coughing, as did the heat. Plaintiff had suffered such symptoms
10 and participated in such treatment over the past several years,
11 and it limited her walking and physical exertion in the heat.
12 (A.R. 23-29.)

13     The ALJ adverted to Plaintiff's claims of a sedentary
14 existence virtually devoid of daily activities with limitations
15 in lifting, standing, and walking. (A.R. 13-14.) He also
16 mentioned her subjective complaints regarding her asthma. In the
17 course of his credibility analysis, the ALJ stated that he had
18 considered the extent to which Plaintiff's symptoms could
19 reasonably be accepted as consistent with the objective medical
20 evidence and other evidence, and he had considered the pertinent
21 factors for credibility determination. (A.R. 12.) The ALJ stated
22 that where statements about the intensity, persistence, or
23 functionally limiting effects of pain or other symptoms were not
24 substantiated by medical evidence, he was required to make a
25 finding on the credibility of the statement based on the entire
26 case record. (A.R. 12.) The ALJ expressly noted Plaintiff's
27 undated asthma questionnaire in which she reported that she used
28 an inhaler and nebulizer four times daily and could not be

10

without her medications. (A.R. 13, 144-45.) The ALJ then noted
the inconsistent medical record of March 2005, which reflected
that Plaintiff had stopped using her Albuterol and Advair
inhalers for two days. (A.R. 13, 259.) Further, as noted by the
ALJ, progress notes indicated that her throat was clear, asthma
was stable, and lungs were clear to auscultation with no
wheezing. (A.R. 13, 251-59, 255 [no wheezing or retraction on
asthma follow-up in November 2005], 254 [same in January 2006],
253 [asthma stable in May 2006], 250 [March 2006, Kern Medical
Center outpatient aftercare instructions, with additional follow-
up instructions "Please stop smoking"), 245 [April 2006 note from
Kern Medical Center that medications were refilled and that
Plaintiff smoked one-half pack per day], 230 [instruction in
April 20, 2006, to please stop smoking in one week], 227 [Kern
Medical Center assessment of stable asthma, smoker, with plan to
use Albuterol for nebulizer], 226 [note from April 20, 2006, that
lungs were clear to auscultation].)

        In addition to the inconsistency with the medical record,
the ALJ noted Plaintiff's inconsistent statements concerning her
work history. (A.R. 13-14.) Substantial evidence supported the
ALJ's reasoning. In her application, Plaintiff had claimed to be
unable to work as of April 9, 1999 (A.R. 136), and she had
reported to Dr. Bansal in April 2006 that she was unable to work
since 1995 due to mainly severe back pain (A.R. 260.)

        However, she inconsistently admitted in an undated work
history report that she worked from September 1999 through June
2005 as a babysitter and child care provider for three and one-
half hours a day, five days a week, walking for fifteen hours,

standing five hours, sitting one and one-half to two hours, and
supervising three people (interpreted as a reference to three
children). (A.R. 149, 146-49.) She reported to Dr. Kim in March
2005 that she was employed at providing childcare in her home.
(A.R. 203.) A Kern County Mental Health progress note from April
2006 reflected that Plaintiff stated that she could take care of
her autistic grandson ("can't sit down"). (A.R. 302.) In July
2007, she reported that she was taking care of all of her
grandchildren; in a work history report of April 2008 she
reported that she babysat her grandchildren from April 2007
through April 2008. (A.R. 184.) A letter from Dr. Obrocea of
April 2008 reflected that in brief periods of remission,
Plaintiff was able to care for her home and her grandchildren.
(A.R. 321.)

    The ALJ's determination proceeded pursuant to correct legal
standards. Unless there is affirmative evidence that the
applicant is malingering, then where the record includes
objective medical evidence establishing that the claimant suffers
from an impairment that could reasonably produce the symptoms of
which the applicant complains, an adverse credibility finding
must be based on clear and convincing reasons. Carmickle v.
Commissioner, Social Security Administration,, 533 F.3d 1155,
1160 (9th Cir. 2008). Inconsistent statements are matters
generally considered in evaluating credibility and are properly
factored in evaluating the credibility of a claimant with respect
to subjective complaints. In rejecting testimony regarding
subjective symptoms, permissible grounds include a reputation for
dishonesty, conflicts or inconsistencies between the claimant's

testimony and his conduct or work record, or internal
contradictions in the testimony; and testimony from physicians
and third parties concerning the nature, severity, and effect of
the symptoms of which the claimant complains. Moisa v. Barnhart,
367 F.3d 882, 885 (9th Cir. 2004); Thomas v. Barnhart, 278 F.3d
947, 958-59 (9th Cir. 2002). The ALJ may consider whether the
Plaintiff's testimony is believable or not. Verduzco v. Apfel,
188 F.3d 1087, 1090 (9th Cir. 1999).

Although the inconsistency of objective findings with
subjective claims may not be the sole reason for rejecting
subjective complaints of pain, Light v. Chater, 119 F.3d 789, 792
(9th Cir. 1997), it is one factor which may be considered with
others, Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004);
Morgan v. Commissioner 169 F.3d 595, 600 (9th Cir. 1999).

Further, it was appropriate for the ALJ to consider the lack
of objective indicia of Plaintiff's impairments, including lack
of objective clinical findings, inconsistent activities of daily
living, use of conservative treatment, and effectiveness of
medications in controlling the symptoms. Soc. Sec. Ruling 96-7p
and 20 C.F.R. § 416.929(c)(4)(1)(vii); Smolen v. Chater, 80 F.3d
1273, 1284 (9th Cir. 1996); Bunnell v. Sullivan, 947 F.2d at 346
(9th Cir. 1991); Kepler v. Chater, 68 F.3d 387, 391 (10th Cir.
1995).

In the circumstances of the present case, Plaintiff's
inconsistent statements and the medical record constituted clear
and convincing reasons, supported by substantial evidence, for
the ALJ's credibility findings. The Court concludes that the ALJ
cited clear and convincing reasons for rejecting Plaintiff's

subjective complaints concerning her asthma and medications to the extent alleged, and that the ALJ's reasons were properly supported by the record and sufficiently specific to allow this Court to conclude that the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit Plaintiff's testimony.

The ALJ thus was not required to include Plaintiff's claimed limitations in her RFC or in the hypothetical questions propounded to the vocational expert (VE). A hypothetical question posed to a VE must be based on medical assumptions supported by substantial evidence that reflects all the claimant's limitations. Osenbrock v. Apfel, 240 F.3d 1157, 1164-65 (9th Cir. 2001) (citing Roberts v. Shalala, 66 F.3d at 184)). An ALJ may accept or reject restrictions in a hypothetical question that are not supported by substantial evidence. Osenbrock, 240 F.3d 1157, 1164-65.

   V.   Consideration of Expert Opinions relating to Plaintiff's
        RFC

        A.   Background Contentions

Plaintiff correctly contends that in determining a claimant's RFC, it is necessary to consider all the claimant's impairments. Social Security regulations define residual functional capacity as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." Reddick v. Chater, 157 F.3d 715, 724 (9th Cir. 1998) (citing 20 C.F.R. 404, Subpt. P, App. 2 § 200.00(c) and Lester v. Chater, 81 F.3d 821, 833 (9th Cir. 1995)). The Commissioner must evaluate the claimant's

1  "ability to work on a sustained basis." Id. (citing 20 C.F.R. §

2  404.1512(a)); Lester, 81 F.3d at 833); see 20 C.F.R. § 416.945.

3  In assessing a claimant's RFC, it is necessary to consider the

4  limiting effects of all the claimants impairments, even those

5  that are not severe. 20 C.F.R. § 416.945(a), (e); Soc. Sec.

6  Ruling 96-8p at 4; Reddick v. Chater, 157 F. 3d 715, 724 (9th Cir.

7  1998).

8      Likewise, Plaintiff is correct in asserting that the ALJ is

9  required to evaluate medical opinions. An ALJ need not discuss

10 evidence that is neither significant nor probative. Howard v.

11 Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003). However, with

12 respect to significant, probative evidence, such as an expert

13 opinion, an ALJ must explicitly reject the opinion and set forth

14 specific reasons of the requisite force for doing so. Nguyen v.

15 Chater, 100 F.3d 1462, 1464 (9th Cir. 1996). The district court

16 cannot make findings for the ALJ. Id. A district court cannot

17 affirm the judgment of an agency on a ground the agency did not

18 invoke in making its decision. Pinto v. Massanari, 249 F.3d 840,

19 847-48 (9th Cir. 2001).

20          B. Rejection of Dr. Obrocea's Opinion

21     Plaintiff's specific contention is that the ALJ failed to

22 evaluate or explain the weight accorded to the "evidence of

23 record" from treating psychiatrist Dr. Gabriela Obrocea. (Pltf.'s

24 Brief p. 1.) The Court understands this argument as asserting

25 that the ALJ failed to state specific and legitimate reasons,

26 supported by substantial evidence, for rejecting the opinion of

27 Dr. Obrocea.

28          1. Medical Record of Treatment by Dr. Obrocea

15

1    The ALJ noted the treating records of Plaintiff's

2 psychiatric evaluation and treatment in March 2006 and follow-up

3 treatment through January 2008. (A.R. 11, 290-308, 313-20.)

4    The record reveals that Kern County Mental Health

5 psychiatrist Gabriela Obrocea, M.D., completed a

6 psychiatric/medication evaluation of Plaintiff on March 7, 2006,

7 and wrote a report of the evaluation on March 21, 2006. (A.R.

8 304-07.) Plaintiff, aged forty-six, lived with two daughters aged

9 twenty-two and seventeen; she had been depressed for years, was

10 anxious, felt isolated, experienced difficulties with

11 concentration, slept poorly, and suffered nightmares from abuse

12 suffered at the hands of an ex-husband who was then incarcerated

13 for attempted murder of a neighbor. She had been more depressed

14 since her mother died in 2001, and the BuSpar and Paxil treatment

15 she had received from her primary care doctor made her somewhat

16 better, but she was only partially compliant with the Paxil

17 because it made her very sleepy, and she had gained about twenty

18 pounds from the treatment. (A.R. 305.) Mental status examination

19 revealed that Plaintiff was well-dressed and well-groomed,

20 cooperative and pleasant, with normal psychomotor activity;

21 speech showed increased latency of response but was otherwise

22 normal; mood was worried; affect was constricted but congruent

23 with mood; ideation was normal, but Plaintiff complained of

24 worries, hopelessness, and despair; thought was coherent and

25 logical, and she had auditory hallucinations with voices of her

26 daughters calling her name; and her insight and judgment were

27 fair. The diagnostic impression was post-traumatic stress

28 disorder, rule out bipolar affective disorder type II, currently

depressed, severe with psychotic features, rule out mood disorder secondary to general medical condition, rule out generalized anxiety disorder, with a GAF of 45. (A.R. 306.) The plan was laboratory work-up and medications including Geodon for depression, insomnia, and hallucinations, and Xanax for anxiety. (A.R. 307.)

Follow-up progress notes from 2006 generally reflect that Plaintiff's medications improved her condition, and mental status exams revealed either an absence of symptoms or mild symptoms. A psychiatric progress note from March 31, 2006, reflects that Plaintiff reported that she complied with her medication, she felt better, her sleep and energy were improved, and her sense of joy was normal. There were no side-effects from her medication. Mental status examination revealed that her mood was depressed; she reported no hallucinations, sleep was all right, and appetite poor. Her physical complaints were that "she eats." She was oriented and neatly groomed with normal speech, good eye contact, unremarkable psychomotor exam, cooperative behavior, euthymic mood, appropriate affect, unremarkable thought process, unremarkable thought content, good insight and judgment, good memory, intact concentration and attention, and average intelligence. (A.R. 303.)

Another such progress note from April 14, 2006, reflects that Plaintiff reported that her medication compliance was good, she was able to take care of her autistic grandson, and everything was much improved. The mental status examination contained the same findings as the previous follow-up exam of March 31, except that it took her only twenty minutes to fall

17

1  asleep for eight full hours, and she was still very low
2  physically. (A.R. 302.) Likewise, a progress note from April 28,
3  2006, reflects good medication compliance, reports of much
4  brighter mood and normal energy, normal sleep, a sense of joy,
5  and a much improved physical condition. Mental status examination
6  reflected the same normal and positive findings as the previous
7  notes. (A.R. 301.)

8      An undated short-form evaluation form was completed by Dr.
9  Obrocea at a time when the most recent visit had been April 28,
10  2006. (A.R. 298-300.) The diagnosis was major depressive
11  disorder, single episode, post-traumatic stress disorder, rule
12  out major depressive episode with psychotic features. (A.R. 298.)
13  The mental status exam revealed that Plaintiff was well-groomed,
14  motor activity was retarded, speech was slow, behavior was
15  cooperative, and Plaintiff was apathetic. She was oriented in all
16  spheres, had mildly impaired concentration, normal memory,
17  average intelligence, mood and affect were depressed and anxious,
18  and there were auditory and visual hallucinations; thought
19  content was nihilistic and preoccupied with suicidal and guilty
20  pessimism, judgment was intact, and as a result Plaintiff was
21  rated poor with respect to understanding, remembering, and
22  carrying out complex instructions and performing activities
23  within a schedule and maintaining regular attendance; she was
24  rated fair with respect to understanding, remembering, and
25  carrying out simple instructions, maintaining concentration,
26  attention and persistence, completing a normal workday and week
27  without interruptions from symptoms, and responding appropriately
28  to changes in a work setting. She was capable of managing funds.

18

(A.R. 300.)

On November 28, 2006, Plaintiff came in with family members and reported that a week previously the father of her son was hit by a truck; since then Plaintiff had been experiencing forgetfulness, anxiety, and fatigue. (A.R. 296.) Her mood was sad half of the time; she denied any hallucinations or negative ideations; her sleep and appetite had been poor; she had slow speech and intermittent eye contact, decreased psychomotor activity, cooperative behavior, sad mood, appropriate affect, good insight and memory, average intelligence, intact attention and concentration, and she was oriented. (A.R. 296.) She was at low risk for dangerous behaviors or hospitalization; with respect to response to treatment, she was minimally worse. The diagnosis had not changed. She was very fearful because of the accident that her ex-boyfriend had and said that her nine-year-old son had not yet been told. The current disability was rated as severe, and Plaintiff could not work; treatment would take greater than one year, and prognosis was guarded. The plan was to continue current medications. (A.R. 296-97.)

A staff person in Dr. Obrocea's office, Patricia Pelayo Arredondo, MSW, RS III, partially completed a short form evaluation when the last visit had been December 12, 2006, but it was unsigned and purported to be only a summary of past notes of medical doctors. (A.R. 293-95.) The progress note of the visit of December 12, 2006, reflected that because of the car accident of the father of the son who lived with Plaintiff, Plaintiff was very stressed out but denied mood swings or forgetfulness, had good energy and compliance with medication, euthymic mood because

1  of family problems, no hallucinations, sleep was o.k., she was
2  using tobacco; grooming was neat, speech normal, eye contact
3  good, psychomotor unremarkable, behavior cooperative, mood
4  euthymic, affect appropriate, thought process and content
5  unremarkable, insight and judgment good, memory good, and
6  concentration and attention were intact. (A.R. 291.) Plaintiff's
7  response to treatment was stable, with a minor adjustment in view
8  of recent family dynamics; the diagnosis had not changed; her
9  current disability was severe, and she could not work; treatment
10 would take over a year, and prognosis was guarded. The plan was
11 to continue the current medication regimen. (A.R. 292.)

12     The record contains four other progress notes from dates in
13 July, August, and October 2007 and January 2008. (A.R. 313-20.)
14 In July 2007 Plaintiff reported taking care of all of her
15 grandchildren. Aside from sad, depressed, anxious, and irritable
16 mood and marginal appetite and sleep, the mental status exam
17 reflected no abnormalities or remarkable symptoms; and insight,
18 memory, judgment, attention, and concentration were good.
19 Diagnosis was BPAD II; However, the current disability was
20 assessed as severe, and Plaintiff could not work. (A.R. 319-20.)
21 The note from August 2007 reflects that Plaintiff was seeking
22 counsel in connection with her SSI application. Plaintiff's mood
23 was euthymic. Again, there were no abnormal or remarkable
24 symptoms found on the mental status exam. The note reflected that
25 her response to treatment was much improved. Nevertheless, the
26 notation was that the disability was severe, and Plaintiff could
27 not work; prognosis was guarded. (A.R. 317-18.) In October 2007
28 Plaintiff reported that she was still looking for a lawyer and

was trying to quit smoking. Mood was sad and euthymic; Plaintiff reported nightmares and auditory hallucinations, sleep was poor, and appetite o.k.; again, no abnormal or remarkable symptoms were noted in the exam. (A.R. 315.) The doctor described her response as being in partial remission. (A.R. 316.) Nevertheless, she could not work and suffered a current disability that was severe. The plan was medication: Wellbutrin, Glodin, and Atavan. (A.R. 316.)

In January 2008, Plaintiff was upset because of a disappointment concerning section 8. There were no abnormal or remarkable indications during the exam. (A.R. 313.) Plaintiff's response to treatment was very much improved. Nevertheless, the doctor rated her disability as severe. The doctor's plan included an entry concerning Plaintiff's section 8 issue. (A.R. 314.)

On April 4, 2008, Dr. Obrocea wrote in support of Plaintiff's application for SSI. (A.R. 321-22.) She wrote that Plaintiff suffered from bipolar affective disorder that was chronic with remission and exacerbations; she had been a patient for four years, was genetically predisposed, had early trauma, and during a recent evaluation she was again struggling with severe psychotic depression and would be unable to care for herself. The doctor said that she hoped that the upcoming hearing would "finally bring justice to this case." (A.R. 322.) With respect to Plaintiff's capacity, Dr. Obrocea wrote:

> For the past 10 years Mrs. Thomas has been incapacitated from work and at times disabled to the point of being unable to perform her ADL's. During very brief periods of remission, the patient does not return to her functioning baseline but is able to care for her household and grandchildren.

(A.R. 321.) Dr. Obrocea also completed a mental RFC assessment dated April 10, 2008, in which she found that Plaintiff was markedly limited in the ability to remember locations and work-like procedures; understand, remember, and carry out detailed instructions; maintain concentration and attention for extended periods, perform within a schedule, maintain attendance and be punctual, work with others without being distracted, make simple, work-related decisions, complete a normal workday and week and perform consistently without unreasonable rest periods, accept instructions and respond appropriately to criticism from supervisors, respond appropriately to changes in the work setting, be aware of normal hazards, travel in unfamiliar places or use public transportation, or set realistic goals or make plans independently of others. (A.R. 323-24.)

## 2. Additional Medical Record

On July 20, 2006, H. Biala, M.D., a non-examining state agency physician, completed a RFC evaluation of Plaintiff, finding that Plaintiff had sufficient ability to understand and remember simple instructions; sufficient ability to carry out short instructions, perform activities with directions without additional support, and maintain attention in two-hour increments; and sufficient ability to maintain socially appropriate behavior, accept instructions and respond appropriately to criticism from supervisors, interact appropriately with the general public, and appropriately respond to changes in the work setting. (A.R. 268-72, 271.) Biala concluded that Plaintiff was moderately limited in the ability to understand, remember, and carry out detailed instructions but

otherwise was not significantly limited with respect to understanding and memory, sustained concentration and persistence, social interaction, or adaptation. (A.R. 268-69.)

On March 6, 2007, non-examining psychologist Charles Lawrence, Ph.D., conducted a mental impairment review of Plaintiff's records in connection with the reconsideration/appeal application of Plaintiff, who had alleged worsening of her condition. Lawrence reviewed all the evidence in the file and confirmed the psychiatric review technique form and mental RFC assessment of July 20, 2006. (A.R. 309.) Lawrence stated:

> THE NEW EVIDENCE FROM THE TREATING MENTAL HEALTH AGENCY DOES NOT CONFIRM THAT THE CLAIMANT'S MOOD DISORDER HAS WORSENED. THERE ARE RECORDS OF VISITS TO THE TREATING PSYCHIATRIST IN NOV AND DEC 2006. ALTHOUGH THERE WAS A FAMILY CRISIS THAT CAUSED THE CLAIMANT TO BECOME MORE EMOTIONALLY DISTRESSED IN THE NOV SESSION, BY 12/12/06 HER MOOD WAS AGAIN EUTHYMIC, WITH APPROPRIATE AFFECT, UNREMARKABLE THOUGHT PROCESSES, AND GOOD MEMORY WITH INTACT CONCENTRATION. THERE WAS SOME SADNESS DUE TO FAMILY PROBLEMS, BUT NO EXACERBATION OF MOOD DISORDER. FOR REASONS NOT EXPLAINED, DR. OBROCEA CHECKED THE BLOCK INDICATING SEVERE DISABILITY, ALSO "NO" FOR ABLE TO WORK, IN THE FORMS FOR BOTH OF THESE SESSIONS. IT DOES NOT SEEM REASONABLE TO CONSIDER A PERSON WHO IS PSYCHIATRICALLY STABLE TO BE PSYCHIATRICALLY DISABLED FROM WORK.

> THE PRIOR MENTAL REVIEW PROJECTED THE CLAIMANT TO HAVE NO SUBSTANTIAL MENTAL LIMITATIONS BY MARCH 2007. THAT ASSESSMENT IS CONFIRMED BY THE MORE RECENT RECORDS OF TREATMENT.

> CONCLUSION: I HAVE REVIEWED ALL THE EVIDENCE IN THE FILE, AND THE PRTF AND MRFC ASSESSMENT OF 7/20/06 ARE AFFIRMED, AS WRITTEN.

(A.R. 309.)

### 3. Legal Standards

The standards for evaluating treating source's opinions are as follows:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18

    By rule, the Social Security Administration favors
the opinion of a treating physician over
non-treating physicians. See 20 C.F.R. § 404.1527. If a
treating physician's opinion is "well-supported by
medically acceptable clinical and laboratory diagnostic
techniques and is not inconsistent with the other
substantial evidence in [the] case record, [it will be
given] controlling weight." Id. § 404.1527(d)(2). If a
treating physician's opinion is not given "controlling
weight" because it is not "well-supported" or because
it is inconsistent with other substantial evidence in
the record, the Administration considers specified
factors in determining the weight it will be given.
Those factors include the "[l]ength of the treatment
relationship and the frequency of examination" by the
treating physician; and the "nature and extent of the
treatment relationship" between the patient and the
treating physician. Id. §  404.1527(d)(2)(i)-(ii).
Generally, the opinions of examining physicians are
afforded more weight than those of non-examining
physicians, and the opinions of examining non-treating
physicians are afforded less weight than those of
treating physicians. Id. § 404.1527(d)(1)-(2).
Additional factors relevant to evaluating any medical
opinion, not limited to the opinion of the treating
physician, include the amount of relevant evidence that
supports the opinion and the quality of the explanation
provided; the consistency of the medical opinion with
the record as a whole; the specialty of the physician
providing the opinion; and "[o]ther factors" such as
the degree of understanding a physician has of the
Administration's "disability programs and their
evidentiary requirements" and the degree of his or her
familiarity with other information in the case record.
Id. § 404.1527(d)(3)-(6).

19  Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007).

20      With respect to proceedings under Title XVI, the Court notes

21  that an identical regulation has been promulgated. See, 20 C.F.R.

22  § 416.927.

23      As to the legal sufficiency of the ALJ's reasoning, the

24  governing principles have been recently restated:

25
26
27
28

    The opinions of treating doctors should be given more
weight than the opinions of doctors who do not treat
the claimant. Lester [v. Chater, 81 F.3d 821, 830 (9th
Cir.1995) (as amended).] Where the treating doctor's
opinion is not contradicted by another doctor, it may
be rejected only for "clear and convincing" reasons
supported by substantial evidence in the record. Id.

(internal quotation marks omitted). Even if the
treating doctor's opinion is contradicted by another
doctor, the ALJ may not reject this opinion without
providing "specific and legitimate reasons" supported
by substantial evidence in the record. Id. at 830,
quoting Murray v. Heckler, 722 F.2d 499, 502 (9th
Cir.1983). This can be done by setting out a detailed
and thorough summary of the facts and conflicting
clinical evidence, stating his interpretation thereof,
and making findings. Magallanes [v. Bowen, 881 F.2d
747, 751 (9th Cir.1989).] The ALJ must do more than
offer his conclusions. He must set forth his own
interpretations and explain why they, rather than the
doctors', are correct. Embrey v. Bowen, 849 F.2d 418,
421-22 (9th Cir.1988).
Reddick v. Chater, 157 F.3d 715, 725 (9th Cir.1998);
accord Thomas, 278 F.3d at 957; Lester, 81 F.3d at
830-31.

Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007).

### 3. Analysis

Here, immediately after making his credibility finding

concerning Plaintiff's subjective complaints, the ALJ then

referred to Dr. Obrocea's letter of April 2008 concerning

Plaintiff's incapacitation for ten years with the exception of

very brief periods of remission. The ALJ reasoned:

During a recent evaluation, Dr. Obrocea established
that the claimant was again struggling with
severe psychotic depression and would be unable to care
for herself (citation omitted). This is a contradiction
of fact since she noted much improved symptoms and stable
condition in successive treatment notes in 2007
(citations omitted). She also indicated severe disability
and the inability to work, but was at low risk of
dangerous behavior (citations omitted). Dr. Obrocea
also submitted a mental assessment essentially showing
that the claimant met Listing 12.04 with marked limitations
in 13 areas of functioning (citation omitted). It
does not seem reasonable to consider a person who is
psychiatrically stable to be psychiatrically disabled
from work.

The claimant testified and told Dr. Obrocea that she
babysat her grandson and was being paid from April
2007 to April 2008 (citation omitted). She testified she
cares for her seventeen-year-old disabled daughter. She
received food stamps and section 8 housing assistance.
She read, sewed, and watched television (citation omitted).

1
2

    Dr. Bansal noted that the claimant's symptoms seemed to
be much worse than the clinical examination findings and
radiological findings (citation omitted).

3 (A.R. 14). The ALJ then addressed the opinion evidence. He gave

4 great weight to the opinions of the state agency physicians, who

5 concluded essentially that Plaintiff could perform light work

6 with specified environmental limitations, and the ALJ noted that

7 Plaintiff's asthma seemed to be under fair control with

8 medications. (A.R. 14.) The ALJ noted the state agency

9 physicians' conclusions that Plaintiff could understand,

10 remember, and carry out simple instructions, perform activities

11 with directions without additional support and maintain attention

12 in two-hour increments, maintain socially appropriate behavior,

13 accept instructions and respond appropriately to criticism from

14 supervisors, interact appropriately with the general public, and

15 appropriately respond to changes in work setting. (A.R. 14.) The

16 ALJ noted Dr. Bansal's opinion that Plaintiff should be able to

17 do normal work for any person of her age with normal sitting,

18 standing, bending, and lifting up to ten or twenty pounds of

19 weight intermittently in an eight-hour day period, with

20 intermittent breaks and rest. (A.R. 15.) Finally, the ALJ noted

21 that Dr. Kim found no objective findings to support Plaintiff's

22 subjective claims of pain in the low back, left toe, and left

23 knee; Plaintiff had full range of motion in all those joints

24 without abnormalities. The ALJ noted Dr. Kim's opinion that

25 Plaintiff could lift and carry 100 pounds occasionally and fifty

26 pounds frequently, and stand and walk for six hours in an eight-

27 hour workday; the ALJ stated:

28     I give great weight to the limitations of standing

26

1          and walking, but giving her the benefit of the doubt,
I further reduce her lifting and carrying limitations
2          as stated in the residual functional capacity.

3 (A.R. 15.)

4      Because Dr. Obrocea's opinion was contradicted, the ALJ had

5 to articulate specific and legitimate reasons for giving less

6 weight to it and for crediting the contrary opinions. The first

7 reason stated by the ALJ, namely, that Dr. Obrocea's opinion was

8 inconsistent with, or unsupported by, progress notes, was

9 specific and legitimate. It is established that it is appropriate

10 for an ALJ to consider the absence of supporting findings, and

11 the inconsistency of conclusions with the physician's own

12 findings, in rejecting a physician's opinion. Johnson v. Shalala,

13 60 F.3d 1428, 1432-33 (9th Cir. 1995); Matney v. Sullivan, 981

14 F.2d 1016, 1019 (9th Cir. 1992); Magallanes v. Bowen, 881 F.2d

15 747, 751 (9th Cir. 1989). A conclusory opinion that is

16 unsubstantiated by relevant medical documentation may be

17 rejected. See Johnson v. Shalala, 60 F.3d 1428, 1432-33 (9th Cir.

18 1995).

19      As the previous summary of Dr. Obrocea's treatment notes

20 reveals, the record of improvement in symptoms and normal or mild

21 clinical findings was inconsistent with the conclusion of severe

22 disability. Likewise, Dr. Obrocea's conclusion regarding

23 disability was inconsistent with the conclusion that Plaintiff

24 was at low risk for dangerous behavior.

25      To the extent that medical evidence is inconsistent,

26 conflicting, or ambiguous, it is the responsibility of the ALJ to

27 resolve any conflicts and ambiguity. Morgan v. Commissioner, 169

28 F.3d 595, 603 (9th Cir. 1999). Where evidence is susceptible to

more than one rational interpretation, it is the ALJ's conclusion that must be upheld. <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005).

The ALJ also stated another reason that was specific and legitimate, and supported by substantial evidence in the record, namely, that disability was inconsistent with Plaintiff's activities of daily living and work history. It is permissible to rely on the Plaintiff's testimony regarding her impairments in discrediting a treating physician's opinion. <u>Fisher v. Schweiker</u>, 568 F.Supp. 900, 903 (N.D.Cal. 1983). Plaintiff's activities of daily living have been used as a basis for rejecting the opinion of a treating physician. <u>Nguyen v. Commissioner of Social Security</u>, 2008 WL 859425, *8 (E.D.CA March 28, 2008).

The record contains substantial evidence that supports the ALJ's reasoning, including Plaintiff's testimony and reports to Dr. Obrocea that she babysat her grandson and was being paid from April 2007 through April 2008, her report in July 2007 that she took care of all her grandchildren and her youngest daughter, her testimony that she cared for her seventeen-year-old disabled daughter, and her report in 2005 to Dr. Kim that she performed childcare in her home as her employment and occupied her time by watching television, reading, and sewing. In addition, the record contains the undated work history report by Plaintiff indicating that she worked part-time as a childcare provider and babysitter from September 1999 to June 2005. (A.R. 147-48, 319.)

The ALJ also relied on the fact that Dr. Bansal had noted that Plaintiff's symptoms were much worse than the findings on clinical exam and radiological findings. The fact that an opinion

is based primarily on the patient's subjective complaints may be properly considered. <u>Matney on Behalf of Matney v. Sullivan</u>, 981 F.2d 1016, 1020 (9th Cir. 1992). Where a treating source's opinion is based largely on the Plaintiff's own subjective description of his or her symptoms, and the ALJ has discredited the Plaintiff's claim as to those subjective symptoms, the ALJ may reject the treating source's opinion. <u>Fair v. Bowen</u>, 885 F.2d 597, 605 (9th Cir. 1989). Here, the ALJ had concluded that Plaintiff's subjective complaints were not entirely credible with respect to the intensity, persistence, and limiting effects of Plaintiff's symptoms. (A.R. 14.) The Court concludes that the internal examiner's conclusion that Plaintiff's complaints exceeded the radiological and other clinical, objective findings was pertinent to the weight put on Dr. Obrocea's opinion and to the RFC finding, and it was supported by substantial evidence.

Plaintiff argues that the ALJ's conclusions cannot be upheld because of the ALJ's statement concerning the unreasonableness of a psychiatrically stable person's being psychiatrically disabled from work. (A.R. 14.)[4]

It seems logically possible to the Court that a person whose psychiatric condition is stable might nevertheless be completely disabled. However, the Court understands the ALJ's statement not primarily as one concerning the general subject of the relationship between psychiatric stability and psychiatric

---

[4] Plaintiff also asserts that it was Plaintiff's response to treatment that was stable or improved, not Plaintiff's level of disability. However, reference to the treatment notes reflects that there is much additional information indicating improved or mild objective factors in addition to the entries concerning responses to treatment.

1  disability, but rather as a reference to Dr. Lawrence's

2  statement, which in turn addressed whether Plaintiff's mood

3  disorder had worsened. Dr. Lawrence's main point was the

4  inconsistency of the treatment record, which reflected relative

5  stability and improvement of symptoms, with Dr. Obrocea's

6  ultimate conclusion of total disability. Dr. Lawrence had

7  emphasized that Dr. Obrocea had not explained her conclusions,

8  and that in light of her findings, it did not seem reasonable to

9  consider Plaintiff psychiatrically disabled.

10     However, even if the ALJ's statement concerning stability

11 and disability is considered to be other than a specific,

12 legitimate reason supported by substantial evidence in the

13 record, any error would nevertheless be harmless. It is

14 established that an ALJ's error may be considered harmless where

15 it relates to only one of a number of legally sufficient, record-

16 supported reasons, such as where only one of a few reasons for

17 discrediting testimony was erroneous. Stout v Commissioner, 454

18 F.3d 1050, 1054-55 (9th Cir. 2006). Here, any reasoning concerning

19 stability and disability does not detract from the other

20 specific, legitimate, record-supported reasons for the ALJ's

21 conclusions, including the inconsistency of Dr. Obrocea's

22 treatment notes with her conclusions, the inconsistency of

23 Plaintiff's work history and daily activities with the opinion,

24 and the absence of objective findings. The Court thus concludes

25 that if any error occurred with respect to the statement

26 concerning stability and disability, any such error was harmless.

27     VI. Disposition

28     Based on the foregoing, the Court concludes that the ALJ's

1  decision was supported by substantial evidence in the record as a

2  whole and was based on the application of correct legal

3  standards.

4       Accordingly, the Court AFFIRMS the administrative decision

5  of the Defendant Commissioner of Social Security and DENIES

6  Plaintiff's Social Security complaint.

7       The Clerk of the Court IS DIRECTED to enter judgment for

8  Defendant Michael J. Astrue, Commissioner of Social Security,

9  and against Plaintiff Francine J. Thomas.

10

11  IT IS SO ORDERED.

12  **Dated:    January 10, 2010**            **/s/ Sandra M. Snyder**
                                    UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28